**GREENSPOON MARDER LLP**
Kelly M. Purcaro, Esq.
Kory Ann Ferro, Esq.
One Gateway Center, Suite 2600
Newark, New Jersey 07102
Tel.: (732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

**RAJ FERBER PLLC**
Kiran Raj (admitted *Pro Hac Vice*)
Ryan Scott Ferber (admitted *Pro Hac Vice*)
1629 K Street NW, Suite 300
Washington, DC 20006
Tel.: (202) 827-9785
kiran@rajferber.com
scott@rajferber.com

*Attorneys for Defendant DarkOwl, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons,* PATRICK COLLIGAN, and PETER ANDREYEV, <br><br> *Plaintiffs,* <br> v. <br><br> DARKOWL, LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals and* ABC COMPANIES 1-10, *fictitious names of unknown entities,* <br><br> *Defendants.* | Case No.: 1:24-cv-10600 <br><br> Civil Action <br><br> **ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND DEMAND FOR JURY TRIAL** |

Defendant, DarkOwl, LLC ("DarkOwl"), by and through its undersigned counsel, hereby timely responds to the Complaint filed by Plaintiffs, Atlas Data Privacy Corporation, *as assignee of individuals who are Covered Persons*, Patrick Colligan, and Peter Andreyev ("Plaintiffs"). The Headings and Paragraph numbers below correspond to the Headings and Paragraphs contained in the Complaint.

## **INTRODUCTION**

1.    DarkOwl denies that it is one of the alleged "uncooperative profit-seeking data brokers" as described in Paragraph 1 of the Complaint. DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1 of the Complaint and accordingly denies the allegations.

2.    DarkOwl denies that it is one of the alleged companies "without sufficient regard for the risks and consequences imposed upon individuals who serve (and have served) critical judicial and law enforcement roles" as described in Paragraph 2 of the Complaint. DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 2 of the Complaint and accordingly denies the allegations.

3.    DarkOwl denies that it is a "data broker" or that it "wantonly and repeatedly disregard[s] the law" or "demonstrate[s] a callousness towards the well-being of [those who serve]" as described in Paragraph 3 of the Complaint. DarkOwl

is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 3 of the Complaint and accordingly denies the allegations.

4.      DarkOwl admits that Plaintiffs filed this action. DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4 of the Complaint and accordingly denies the allegations.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5.      DarkOwl admits the allegations contained in Paragraph 5 of the Complaint.

6.      DarkOwl admits the allegations contained in Paragraph 6 of the Complaint.

7.      DarkOwl denies that it is a "data broker" or provides "people finder resources available on the Internet" and denies that it provides "the same kind of data broker services" as described in Paragraph 7 of the Complaint.

### New Jersey Passes Daniel's Law in 2020

8.      DarkOwl admits that Daniel's Law is codified in N.J.S.A. 47:1a-1, et seq. and N.J.S.A. 56:9-166.1 and such statute speaks for itself and is the best evidence of its contents. DarkOwl is without knowledge or information sufficient

to form a belief as to the truth of the remaining allegations contained in Paragraph 8 of the Complaint and denies same to the extent they incorrectly state a conclusion of law.

9.      DarkOwl admits that Daniel's Law is codified in N.J.S.A. 47:1a-1, et seq. and N.J.S.A. 56:9-166.1 and such statute speaks for itself and is the best evidence of its contents. DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 9 of the Complaint and denies same to the extent they incorrectly state a conclusion of law.

10.      DarkOwl admits that Daniel's Law is codified in N.J.S.A. 47:1a-1, et seq. and N.J.S.A. 56:9-166.1 and such statute speaks for itself and is the best evidence of its contents. DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 10 of the Complaint and denies same to the extent they incorrectly state a conclusion of law.

11.      DarkOwl admits that Daniel's Law is codified in N.J.S.A. 47:1a-1, et seq. and N.J.S.A. 56:9-166.1 and such statute speaks for itself and is the best evidence of its contents. DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph

11 of the Complaint and denies same to the extent they incorrectly state a conclusion of law.

## **Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

12.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint and accordingly denies the allegations.

13.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint and accordingly denies the allegations.

14.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint and accordingly denies the allegations.

## **Violence Against Police Officers and Judges Has Not Stopped**

15.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint and accordingly denies the allegations.

16.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint and accordingly denies the allegations.

17.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint and accordingly denies the allegations.

## THE PARTIES

### The Individual Plaintiffs

18.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint and accordingly leaves Plaintiffs to their proofs.

19.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint and accordingly leaves Plaintiffs to their proofs.

### Plaintiff Atlas and its Assignors

20.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint and accordingly leaves Plaintiffs to their proofs.

21.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint and accordingly denies the allegations.

22.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint and accordingly denies the allegations.

23.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint and accordingly denies the allegations.

24.    DarkOwl denies the allegations contained in Paragraph 24 of the Complaint.

25.    DarkOwl denies the allegations contained in Paragraph 25 of the Complaint.

26.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint and accordingly denies the allegations.

27.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint and accordingly denies the allegations.

28.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint and accordingly denies the allegations.

29.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Complaint and accordingly denies the allegations.

30.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint and accordingly denies the allegations.

31.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint and accordingly denies the allegations.

32.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint and accordingly denies the allegations.

33.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint and accordingly denies the allegations.

34.    DarkOwl admits that Plaintiffs provided a draft protective order. DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 34 of the Complaint and accordingly denies the allegations.

**Defendants**

35.    DarkOwl admits that it is a Colorado limited liability corporation that has a principal place of business at 1775 N. Sherman Street, Suite 1790, Denver, Colorado 80203.    DarkOwl denies the remaining allegations contained in Paragraph 35 of the Complaint.

36.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint as it references unidentified "Richard Roe" individuals and "ABC Companies." To the extent Paragraph 36 contends that employees of DarkOwl were engaged in any wrongdoing, DarkOwl denies same.

37.    DarkOwl provides access to actionable darknet data to help law enforcement and cybersecurity companies improve public safety and protect against identity theft, unlawful access to and extraction of data from networks, ransomware attacks, fraud and other crimes and illegal activity arising from or occurring on the darknet. It does that, in part, through darkowl.com. DarkOwl denies the remaining allegations contained in Paragraph 37 of the Complaint.

38.    DarkOwl denies the allegations contained in Paragraph 38 of the Complaint.

39.    DarkOwl denies that the characterizations of its services alleged in Paragraph 39 of the Complaint apply to DarkOwl and further denies that DarkOwl

"disclose[s]" information "without sufficient regard to the risks and consequences imposed on individuals." DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 39 of the Complaint and accordingly leaves Plaintiffs to their proofs.

## JURISDICTION & VENUE

40.    Paragraph 40 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, DarkOwl denies that New Jersey state court, where the Complaint was filed, was the proper jurisdiction. DarkOwl further denies that it committed unlawful actions, whether in New Jersey or otherwise. DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this Paragraph and accordingly leaves Plaintiffs to their proofs.

41.    Paragraph 41 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, DarkOwl denies the allegations in Paragraph 41 of the Complaint as venue in Essex County was not proper resulting in the removal of this matter from state court to federal court.

## FACTS COMMON TO ALL COUNTS

42.     Paragraph 42 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, DarkOwl admits that Daniel's Law is codified in N.J.S.A. 47:1a-1, et seq. and N.J.S.A. 56:9-166.1.

43.     Paragraph 43 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, DarkOwl denies the allegations contained in Paragraph 43 of the Complaint to the extent they incorrectly state a conclusion of law.

44.     Paragraph 44 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, DarkOwl denies the allegations contained in Paragraph 44 of the Complaint to the extent they incorrectly state a conclusion of law.

45.     Paragraph 45 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, DarkOwl denies the allegations contained in Paragraph 45 of the Complaint to the extent they incorrectly state a conclusion of law.

46.     Paragraph 46 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, DarkOwl is without knowledge or information sufficient to

11

form a belief as to the truth of the allegations contained in Paragraph 46 of the Complaint and accordingly leaves Plaintiffs to their proofs.

47.    Paragraph 47 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 47 of the Complaint and accordingly leaves Plaintiffs to their proofs.

48.    Paragraph 48 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, DarkOwl denies the allegations contained in Paragraph 48 of the Complaint to the extent they incorrectly state a conclusion of law.

49.    DarkOwl denies the allegations contained in Paragraph 49 of the Complaint.

50.    DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 50 of the Complaint and accordingly denies the allegations.

51.    DarkOwl denies the allegations contained in Paragraph 51 of the Complaint.

52.    DarkOwl denies the allegations contained in Paragraph 52 of the Complaint.

53.     DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 of the Complaint and accordingly denies the allegations.

54.     On July 16, 2025, DarkOwl's counsel received an email from counsel for Plaintiffs purporting to provide DarkOwl with "A 'Covered Persons list,' which includes, for both individuals plaintiffs and the 'Covered Persons' (as defined in the Complaint), the dates the [alleged 48,068] takedown notices were [supposedly] delivered to defendants and the 'category' of covered person into which each person fits. These documents are being produced as 'Confidential' pursuant to the Court's directives." DarkOwl is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 54 of the Complaint and accordingly denies the allegations.

55.     DarkOwl denies the allegations contained in Paragraph 55 of the Complaint.

## COUNT ONE

### (Daniel's Law)

56.     DarkOwl repeats, realleges, and incorporates by reference each of the preceding Paragraphs of this Answer as if fully set forth herein.

57.     DarkOwl denies the allegations contained in Paragraph 57 of the Complaint.

58.    Paragraph 58 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, DarkOwl denies the allegations contained in Paragraph 58 of the Complaint to the extent they incorrectly state a conclusion of law.

59.    DarkOwl denies the allegations contained in Paragraph 59 of the Complaint.

60.    DarkOwl denies the allegations contained in Paragraph 60 of the Complaint.

61.    DarkOwl denies the allegations contained in Paragraph 61 of the Complaint.

62.    DarkOwl denies the allegations contained in Paragraph 62 of the Complaint.

**WHEREFORE**, DarkOwl demands judgment against Plaintiffs dismissing their Complaint with prejudice, awarding DarkOwl attorneys' fees and costs and granting such other and further relief as the Court deems just and proper.

As to any part of the Complaint not specifically admitted, denied, or discussed with respect to DarkOwl, DarkOwl hereby denies said allegations, including, but not limited to, any allegations contained in the Complaint's preamble, headings, subheadings, and wherefore clauses. Furthermore, any

averments in the Complaint to which no responsive pleadings are capable or required shall be deemed denied.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof where it otherwise rests with Plaintiffs, DarkOwl pleads the following affirmative defenses to Plaintiffs' Complaint:

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, for failure to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable Statute of Limitations.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs lack standing to bring this action as Plaintiffs have not suffered the requisite harm required to confer standing under Article III of the United States Constitution.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs lack standing to bring the claims by way of assignment and/or as noncovered persons.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because any alleged wrongdoing by DarkOwl, which DarkOwl denies, was caused by mistake. Indeed, DarkOwl acted reasonably and in good faith at all material times based on all relevant facts and circumstances known by DarkOwl at the time DarkOwl acted.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of waiver.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the subject alleged speech constitute commercial speech protected by the First Amendment of the United States Constitution and the imposition of liability for such protected speech violates the First Amendment rights of the speaker.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs failed to mitigate their damages. While DarkOwl does not concede that it has violated Daniel's Law or that Plaintiffs sustained damages, recovery (if any) should be reduced in proportion to Plaintiffs' failure to mitigate such damages.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs seek impermissible liquidated damages.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the alleged requests were sent for an improper purpose, and in an effort to manufacture and pursue litigation on a massive group action basis and not to seek compensation for damages suffered, as contemplated by statute.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of unjust enrichment.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the alleged damages Plaintiffs seek were caused in whole or in part by the acts or omissions or intervening and superseding acts of negligence or intentional conduct on the part of persons or entities over whom DarkOwl has neither control nor right of control and for whose actions DarkOwl is not liable.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the statutory damages provisions of the law are excessive fines and/or are grossly disproportionate to any actual harm that may have been suffered. Accordingly, such statutory damages provisions violate the United States Constitution.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the Communications Decency Act. See 47 U.S.C. § 230 et seq.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited as violative of the United States Constitution as applied to DarkOwl.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for injunctive relief fail or otherwise are barred, in whole or in part, or are limited because there is neither continuing harm nor immediate

danger to Plaintiffs as DarkOwl is not a data broker and does not make information available to the general public; rather, DarkOwl provides cyber security services which indeed reduce the risk of harm or danger.

### NINETEENTH AFFIRMATIVE DEFENSE

DarkOwl did not owe a duty to Plaintiffs.

### TWENTIETH AFFIRMATIVE DEFENSE

DarkOwl did not breach any legal duty owed to Plaintiffs.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

DarkOwl was not the actual or proximate cause of the damages claimed by Plaintiffs.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

The claims against DarkOwl are barred by the doctrines of comparative and/or contributory negligence.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

Public policy prohibits recovery by Plaintiffs against DarkOwl.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' allegations are barred by the common law doctrine of impossibility of performance.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Atlas failed to provide full and complete information to their users regarding DarkOwl, its services, and its platform during the opt-out and/or assignment process resulting in improper opt-out requests based on misinformation and incomplete information and/or invalid assignments.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims of punitive damages fail or otherwise are barred, in whole or in part, or are limited because DarkOwl did not engage in any acts or omissions actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. In addition, the award of such damages would violate DarkOwl's rights under the Constitutions of the State of New Jersey and the United States of America.

## TWENTY-SEVENTY AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of laches.

## RESERVATION OF RIGHTS

DarkOwl reserves the right to amend or add to its affirmative defenses upon discovery of additional information or evidence or as justice so requires.

DarkOwl reserves the right to implead third parties upon discovery of additional information or evidence or as justice so requires.

**WHEREFORE**, DarkOwl demands judgment against Plaintiffs dismissing their Complaint with prejudice, awarding DarkOwl attorneys' fees and costs and granting such other and further relief as the Court deems just and proper.

## <u>COUNTERCLAIMS</u>

Defendant/Counterclaimant DarkOwl, LLC ("DarkOwl"), by and through its undersigned counsel, hereby complains by way of Counterclaim against Plaintiffs/Counterclaim-Defendants Atlas Data Privacy Corporation, *as assignee of individuals who are Covered Persons*, Patrick Colligan, and Peter Andreyev ("Plaintiffs") as follows:

## <u>PARTIES</u>

1.     Defendant/Counterclaimant DarkOwl is a limited liability corporation, incorporated in, and with a principal place of business located at, 1775 N. Sherman Street, Suite 1790, Denver, Colorado 80203. DarkOwl provides cybersecurity services including Government Cybersecurity Solutions, Threat Intelligence Services, Fraud Protection, Digital Identity Protection, National Security Services, and similar threat intelligence and security services. DarkOwl provides services via interstate computer services and does not have any offices or locations within the State of New Jersey.

2.      Upon information and belief, Plaintiff Atlas Data Privacy Corporation ("Atlas") is a Delaware corporation organized under the laws of the State of Delaware with its offices located at 201 Montgomery Street, Suite 263, Jersey City, New Jersey.

3.      Upon information and belief, Plaintiff Patrick Colligan is or was a police detective for the police department of Franklin Township in Somerset, New Jersey.

4.      Upon information and belief, Plaintiff Peter Andreyev is or was a police officer for the police department of Point Pleasant in Ocean County, New Jersey.

## JURISDICTION AND VENUE

5.      Jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1), as DarkOwl is a citizen of a state different from Plaintiffs and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in this judicial district pursuant to the assignment of this case to this Court.

## FACTUAL BACKGROUND

7.      Atlas leveraged the amendments to Daniel's Law to improperly create a cottage industry for itself, whereby it designed a process upon which it could recruit "covered persons," sabotage hundreds of businesses, and profit off the legal claims of those very "covered persons" at the expenses of unsuspecting companies.

8.    Atlas sought out and signed up thousands of alleged covered persons (the "Assignors"), asked that they assign their legal rights to Atlas, provided the Assignors with a preset list of target companies, and created "nondisclosure requests" on behalf of the Assignors.

9.    Atlas claims to provide services to "Remove Your Personal Data From the Web" and protect people by "removing your information from Google and data broker websites" as evidenced by Atlas's own website at https://www.atlas.net/:



10.    DarkOwl does not make available personal data "on the web," DarkOwl is not a "data broker," and DarkOwl does not have a "data broker" website nor a "people search website." Yet, Atlas misrepresented its services by the inclusion of DarkOwl on its target list, thereby allowing it to sign-up tens of thousands of Assignors to create over 48,000 invalid "nondisclosure requests" as part of its

scheme.

11.    The "nondisclosure requests" created by Atlas were generic, autogenerated emails completely devoid of the  individual information of the Assignors, which would be needed to, among other things, confirm that the tens of thousands of requests were *bona fide* requests, made on behalf of actual Covered Persons, as defined by Daniel's Law, or even authorized by the Assignors, or if the information provided was in fact "the home address or unpublished home telephone number" of any actual Covered Person (herein "Protected Information").

12.    Indeed, the requests were created and sent by Atlas, and not by the Assignors, as required by Daniel's Law.

13.    Atlas collected Assignors for about six (6) months until it reached over 19,000 in number– all the while withholding such Assignors purported nondisclosure requests until Atlas acquired its critical mass needed to launch its attack.

14.    To be sure, if Atlas were truly concerned about the safety of the Assignors, they would have generated opt-out requests immediately upon an Assignor signing up for services, not months later.

15.    Atlas failed to verify that the Assignors qualified as Covered Persons under Daniel's Law.

16.    Atlas failed to verify that the targeted defendants, including DarkOwl,

possessed or disclosed Protected Information of the Assignors.

17.    Atlas failed to disclose to Assignors that DarkOwl is not a "data broker" and does not make any Protected Information available "on the web" or to the public.

18.    Atlas failed to advise the Assignors of DarkOwl's business, terms of use, privacy practices, or any other material facts about or related to DarkOwl. Atlas further failed to tell the Assignors how DarkOwl actually is used to protect individuals from those wishing to do them harm.

19.    Once Atlas reached a critical mass of Assignors, according to Plaintiffs' Complaint and Atlas's subsequent productions, Atlas sent tens of thousands of emails nearly simultaneously, all from "@atlasmail.com" to "info@darkowl."

20.    Atlas sent this massive email attack with the intent and purpose of bombarding and damaging DarkOwl's computer systems, servers and business with its spam attack.

21.    Atlas sent its spam attack of tens of thousands of nearly identical emails from the same unknown handle to DarkOwl with the purpose and intention of frustrating the 10-day compliance period under Daniel's Law.

22.    Atlas, indeed, sent multiple separate emails on behalf of the same Assignors (e.g., one email for an address, one email for a phone number, one email for an alternate phone number) to generate an even higher volume of emails in its calculated cyber attack against DarkOwl, in an effort to create multiple claims per

Assignor and to further exacerbate the damage to DarkOwl's computer systems and business. In some instances, an Assignor "sent" upwards of five separate email requests.

23.    To be sure, as Ordered by this Court, Atlas first provided a list of some 48,068 emails containing alleged non-disclosure requests.

24.    Then in response to a second Order of this Court, Atlas sent a list purporting to provide DarkOwl with "A 'Covered Persons list', which includes, for both individuals plaintiffs and the 'Covered Persons' (as defined in the Complaint), the dates the [alleged 47,060] takedown notices were [supposedly] delivered to DarkOwl and the 'category' of covered person into which each person fits."

25.    As demonstrated by Atlas's own lists, it appears that some 47,060 - 48,068 separate emails were sent – allegedly on behalf of about 19,000 Assignors. Many of these alleged requests are duplicates, list different addresses and different phone numbers for the same Assignor and otherwise appear to contain separate requests for information for the same Assignor.

26.    Atlas's lists suggests that Atlas sent these approximately 48,000 emails to DarkOwl in a calculated, nearly simultaneous, and massive fashion on the 2023-2024 New Years Holiday, i.e., about 7,000 emails per day continuously from December 30, 2023 - January 5, 2024.

27.    Atlas created and designed this computer-based attack upon DarkOwl,

flooding DarkOwl's system and servers with tens of thousands of emails specifically during the winter holiday season, in an attempt to manufacture claims for the Assignors, and profit for Atlas.

28.    The Complaint[1] alleges that "each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas)" sent nondisclosure request(s) via email to DarkOwl from "AtlasMail" starting on or about December 30, 2023. Complaint at ¶49.

29.    DarkOwl denies that the individual plaintiffs and all of the Assignors sent nondisclosure requests, indeed it was Atlas who created and sent the email spam attack requests.

30.    DarkOwl denies that the requests were valid, denies that the assignments were valid, and denies that the Assignors are all covered persons.

31.    In sending tens of thousands of nearly identical emails from the same email address over the holiday period, Atlas created the appearance of a DDoS[2]

---

[1] October 16, 2024, the Plaintiffs filed the underlying Complaint against DarkOwl in the New Jersey State Court, Law Division, Essex County (State Dkt. ESX-L-007210-24) (the "Complaint"). On November 20, 2024, DarkOwl filed a Notice of Removal of Plaintiffs Complaint before this Court (Dkt. No. 1), which removal was unopposed and thereafter granted by this Court.

[2] A DDoS (Distributed Denial of Service) attack overloads a target server, service, or network with a flood of internet traffic from multiple compromised devices, making it unavailable to legitimate users. Attackers use networks of infected devices, called botnets, to launch these attacks, aiming to exhaust a system's resources and disrupt its normal functionality.

attack. As such, DarkOwl suffered significant distraction from business, disruption, and expenditure of resources in response to the attack.

32.     DarkOwl provides cybersecurity services, to vetted and approved customers only, for safe and secure access to information which is obtained from the darknet, allowing customers (e.g., law enforcement, cybersecurity and anti-fraud companies) the ability to turn this data into a powerful tool to identify risks related to security incidents, breaches of networks, identity theft, ransomware and other illegal activity.

33.     DarkOwl provides a computer-based platform and tools for safely navigating information obtained from the darknet. DarkOwl's database, housing information such as data breaches and cyber-attacks, is updated from tens of thousands of sites across multiple darknets and darknet adjacent sites every day.

34.     DarkOwl's computer-based technology, and its computers/systems, are used in interstate and foreign commerce and/or communications.

35.     By way of example, DarkOwl provides access through its platform to law enforcement and government agencies to assist in the detection and prosecution of crime related to the darknet, such as identify fraud and theft, network penetration, government-related fraud, merchant fraud, gift card fraud, targeting of minors and child extortion, carding and wire fraud, crypto fraud, international threat detection, hostile nation-state activity, monitoring and predicting potential attacks and

targeting of individuals (such as political figures, high-profile individuals, and potential activist targets) and organizations.

36.    Given the sensitive nature of the services provided by DarkOwl and the cybersecurity threats abundant on the darknet, DarkOwl's platform is not available to the general public.

37.    In order to become a customer of DarkOwl and gain access to DarkOwl's services and computer platform, customers must go through a rigorous process including establishing a legitimate need for access to darkweb data, signing legal agreements, undergoing internal and external vetting procedures and checks as well as financial vetting.    DarkOwl's customers are organizations and law enforcement and intelligence agencies and, with the exception of security professionals, DarkOwl does not sell to individuals.

38.    If and when a prospective customer clears DarkOwl's background check and vetting process, then DarkOwl engages in a consultation process with the customer to learn about their use case and eventually issue a Subscription Agreement to gain access to the data.

39.    DarkOwl ethically and safely accesses data from the darknet, allowing only vetted and approved users secure and anonymous access to such data.

40.    The Complaint alleges that Atlas brings claims against DarkOwl "as assignee of the claims of approximately 19,014 individuals." Complaint at ¶21.

41.     The Complaint alleges the screenshot included in the Complaint is a "redacted example of the detailed information provided by [DarkOwl], in violation of Daniel's Law." Id. at ¶38.

42.     Neither Atlas nor the individually named Plaintiffs are customers of DarkOwl and as such, are not authorized to access DarkOwl's computer systems, platform, or data.

43.     Atlas's only way to access the darkweb data through DarkOwl would be by hacking into the system and/or by fraudulent access through one or more of DarkOwl's customers.

44.     Atlas's unauthorized access to DarkOwl's computer systems and data was accomplished by improper means and a plan with at least one other unknown actor to fraudulently, purposefully, and knowingly harm DarkOwl.

45.     DarkOwl did not consent to or otherwise have knowledge of Atlas's unauthorized access.

46.     Atlas's unauthorized access to DarkOwl's computer systems and data, Atlas's misrepresentation of DarkOwl and its services, and Atlas's additional misrepresentations and other nefarious conduct has resulted in DarkOwl refusing to sell its product to New Jersey police and law enforcement agencies and to any cybersecurity companies based in New Jersey since the start of the instant litigation.

47.     As a direct result of Plaintiffs' actions, DarkOwl suffered harm

including, but not limited to, its computer systems, its email system, its business, and other damages related to same.

## COUNT I
### Violations of New Jersey Computer Related Offenses Act
### N.J.S.A. § 2A:38A-3 ("NJCROA")

48.    DarkOwl repeats, realleges, and incorporates by reference each of the preceding Paragraphs of this Counterclaims as if fully set forth herein.

49.    Atlas purposely and/or knowingly accessed DarkOwl's computer, computer system, or network without authorization or in excess of authorization as detailed above, e.g., by way of the massive email spam attack and/or by way of unauthorized access through improper means.

50.    Atlas purposely and/or knowingly accessed, altered, damaged, took and/or destroyed DarkOwl data and/or systems without authorization.

51.    DarkOwl was damaged in business and/or property as a result of the unauthorized access and related misconduct of Atlas, including but not limited to, business disruption, diversion and expenditure of resources, and loss of business.

52.    Atlas acted purposefully and/or knowingly in their unauthorized actions.

53.    Atlas's unauthorized access to DarkOwl's computer and subsequent improper use of DarkOwl's data violated DarkOwl's Terms and Conditions.

54.    As a result, DarkOwl is entitled to and demands civil remedies for

Atlas's violations of the NJCROA, including, but not limited, to injunctive relief, compensatory damages, statutory damages, punitive damages, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## COUNT II
### Tortious Interference

55.    DarkOwl repeats, realleges, and incorporates by reference each of the preceding Paragraphs of this Counterclaims as if fully set forth herein.

56.    DarkOwl has a reasonable expectation of economic advantage and valid, protectable interest in protecting its economic relationship with its current and prospective customers.

57.    DarkOwl has business and contractual relationships with its customers, for example, with certain law enforcement and government agencies.

58.    Atlas knew of DarkOwl's economic relationships and reasonable expectation of economic advantage with its current and prospective customers.

59.    Atlas purposely, intentionally, and maliciously interfered with DarkOwl's economic relationships and reasonable expectation of economic advantage with its current and prospective customers, without justification, by way of its misrepresentations and purposeful creation of the massive, coordinated spam attack of tens of thousands of emails to DarkOwl, presenting as a DDoS attack which is much more malicious and if successful, designed to take down the target's IT

systems, and/or by way of unauthorized access through improper means.

60.    Atlas's actions in this regard inhibited DarkOwl's ability to service their current and prospective customers, caused disruption to services, and among other things, caused DarkOwl to cease providing services to certain current customers and certain prospective customers.

61.    Atlas's actions further caused DarkOwl to deny services to certain customers, both current and prospective.

62.    As a result of Atlas's actions and interference, DarkOwl has suffered and continues to suffer losses and damages, including but not limited to the loss of law enforcement revenue from New Jersey or others. The full amount of DarkOwl's losses and damages shall be proven at trial.

63.    As a result, DarkOwl is entitled to and demands civil remedies for Atlas's Tortious Interference with current and prospective business advantage, including but not limited, to injunctive relief, compensatory damages, punitive damages, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## COUNT III
## Civil Fraud

64.    DarkOwl repeats, realleges, and incorporates by reference each of the preceding Paragraphs of this Counterclaims as if fully set forth herein.

65.    DarkOwl only allows access to its platform and data to DarkOwl

customers.

66.    Atlas is not a DarkOwl customer.

67.    Atlas could not have accessed DarkOwl's platform and/or data unless Atlas or someone on their behalf misrepresented itself to DarkOwl or to a DarkOwl customer.

68.    Such misrepresentation is a material fact as status as a customer, or someone authorized to access DarkOwl's platform and/or data, is required for such access.

69.    Atlas knew they were not DarkOwl customers, nor were they permitted access to DarkOwl's data and/or platform.

70.    Atlas intended for DarkOwl and/or DarkOwl's customer(s) to rely on their misrepresentation and intended to induce action on such reliance.

71.    DarkOwl and/or DarkOwl's customer(s) reasonably relied upon Atlas's misrepresentations.

72.    DarkOwl was damaged and suffered loss as a result of DarkOwl's and/or DarkOwl's customers' reliance on Atlas's misrepresentation. Atlas misrepresented that DarkOwl was a "data broker," misrepresented that DarkOwl makes available "Your Personal Data [on] the Web," misrepresented that DarkOwl provides a "people search website," misrepresented that the tens of thousands of emails targeting DarkOwl were sent from "covered persons" or otherwise

constituted valid requests under Daniel's Law.

73.    Atlas misrepresented the services it provides, that it sought to enforce compliance with Daniel's Law on behalf of Covered Persons and that it was acting to "remov[e] your information from Google and data broker websites," and misrepresented that it provided information and services necessary for same.

74.    Atlas misrepresented that the tens of thousands of emails it sent to DarkOwl were from "covered persons" or otherwise constituted valid requests under Daniel's Law.

75.    Atlas knew its representations were false and/or otherwise unverified – for example, including DarkOwl on its selection list of targeted "data brokers" for Plaintiffs and Assignors to select from, by creating and sending multiple emails per Assignor in an effort to manufacture additional invalid claims in its spam attack and by failing to confirm the covered person status of the Assignors and by failing to confirm the request contained Protected Information.

76.    Atlas intended for DarkOwl, and indeed the Assignors, to rely on its misrepresentations.

77.    DarkOwl was forced to and reasonably relied on the misrepresentations by Altas.

78.    DarkOwl was, and continues to be, damaged and suffered loss as a result of DarkOwl's reliance on Atlas's misrepresentations.

79.     As a result, DarkOwl is entitled to and demands judgment against Atlas for Civil Fraud, including but not limited to, injunctive relief, compensatory damages, punitive damages, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## COUNT IV
## Civil Conspiracy

80.     DarkOwl repeats, realleges, and incorporates by reference each of the preceding Paragraphs of this Counterclaims as if fully set forth herein.

81.     Atlas and/or one or more entities or individuals jointly, separately, or through someone acting on their behalf, conspired and agreed to unlawfully access DarkOwl's computers, platform, and/or data and to take, harm, or otherwise use such unlawfully obtained information.

82.     Atlas and/or one or more entities or individuals, jointly, separately, or through someone acting on their behalf, took overt steps to effectuate such plan and did in fact unlawfully gain access to DarkOwl's computers, platform, and/or data.

83.     Atlas and/or one or more entities or individuals jointly, separately, or through someone acting on their behalf, took additional overt steps and gained access to and took data from DarkOwl's computers, platform, and/or data.

84.     The actions of Atlas and/or one or more entities or individuals jointly, separately, or through someone acting on their behalf, damaged and was the proximate cause of damage to DarkOwl.

36

85.     As a result, DarkOwl is entitled to and demands judgment against Atlas and its co-conspirator(s) for Civil Conspiracy, including but not limited to, injunctive relief, compensatory damages, punitive damages, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

### Prayer for Relief

WHEREFORE, DarkOwl prays for relief to the extent and as permitted by law, as follows:

1.     For judgment against Atlas and Plaintiffs, and in favor of DarkOwl, on each of DarkOwl's Counterclaims I – IV;

2.     Statutory damages;

3.     Injunctive relief;

4.     Compensatory damages;

5.     Actual damages;

6.     Punitive Damages;

7.     Attorney's fees and costs;

8.     Pre and Post Judgement interest; and

9.     Such other relief as the Court deems proper and just.

## DEMAND FOR JURY TRIAL

DarkOwl hereby demands a trial by jury on all issues as provided by Fed. R. Civ. P. 38(b) and L. Civ. R. 38.1.

DATED: October  3, 2025                    Respectfully submitted,

                                           **GREENSPOON MARDER LLP**
                                           *Attorneys for Defendant*
                                           *DarkOwl, LLC*

                                           */s/ Kelly M. Purcaro*
                                           Kelly M. Purcaro, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, I filed a true and correct copy of the foregoing with the court and a copy will be served upon all parties of record via CM/ECF.

                                           */s/ Kelly M. Purcaro*
                                           Kelly M. Purcaro, Esq.